**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Trustees of the United Union of Roofers, Waterproofers and Allied Workers Local 154 Welfare, Pension, Annuity, and Apprenticeship and Training Funds,<br><br>Plaintiffs,<br><br>-v-<br><br>DME Construction Associates Inc., *also known as* DME Contracting Co. Inc.,<br><br>Defendant. | 2:26-cv-135<br>(NJC) (AYS) |

**ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

On January 9, 2026, Plaintiffs Trustees of the United Union of Roofers, Waterproofers and Allied Workers Local 154 Welfare, Pension, Annuity and Apprenticeship and Training Funds ("the Funds") commenced this action against Defendant DME Construction Associates Inc. ("DME") bringing claims under the Employee Retirement Income Security Act ("ERISA") and Labor Management Relations Act ("LMRA") seeking unpaid contributions and other obligations owed to a group of employee benefit funds. (Compl., ECF No. 1.) On March 2, 2026, the Funds filed a Motion for Default Judgment ("Motion") against DME. (Mot., ECF No. 16.) On July 3, 2026, Magistrate Judge Anne Y. Shields issued a Report and Recommendation (the "R&R") recommending that the Funds' Motion for Default Judgment be granted in its entirety with the issuance of an award to the Funds consisting of the following relief:

(1) $85,691.46 in unpaid contributions from July 2025 through November 2025;

(2) $3,653.08 in interest through March 2, 2026, plus interest at the rate of $23.48 per day from March 2, 2026, through the date of judgment;

(3) $8,569.15 in liquidated damages;

(4) $3,231.77 in attorneys' fees and costs; and

(5) post-judgment interest calculated from the date the Clerk of Court enters judgment until date of payment, pursuant to 28 U.S.C. § 1961.

(R&R, ECF No. 18.)

A copy of the R&R was filed electronically on July 3, 2026. (*Id.* at 21.) On July 6, 2026, the Funds' counsel filed a sworn affidavit attesting that she served DME by mailing a copy of the R&R by First Class Mail and by overnight mail on July 6, 2026. (*See* ECF No. 19.) Because the R&R was mailed on July 6, 2026, the deadline to object was July 23, 2026. *See* Fed. R. Civ. P. 5(b)(2)(C) (providing that service by mail "is complete upon mailing"); Fed. R. Civ. P. 6(d) (adding three days for a party to act in response to a document served by mail); *see also Murphy v. Murphy*, No. 20-cv-02388, 2023 WL 2795977, at *1 (E.D.N.Y. Apr. 5, 2023) (setting out these rules for calculating the deadline to object to an R&R). The date for filing any objections has thus expired, and no party has filed an objection to the R&R.

In reviewing a report and recommendation, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). If no objections are filed, a district court reviews a report and recommendation for clear error. *King v. Paradise Auto Sales I, Inc.*, No. 15-cv-1188, 2016 WL 4595991, at *1 (E.D.N.Y. Sept. 2, 2016); *Covey v. Simonton,* 481 F. Supp. 2d 224, 226 (E.D.N.Y. 2007). Because a motion for default judgment is dispositive and because no party has filed timely objections to the R&R, I review the R&R for clear error.

I adopt the R&R in full with the following modifications. Although not explicitly addressed in the R&R, the Funds have complied with the procedural requirements for securing a default judgment and this Court has jurisdiction over this action.

First, having reviewed the motion papers, the applicable law, and the R&R, I find that this Court has jurisdiction over this action under 28 U.S.C. § 1331 because the Complaint brings claims under ERISA and LMRA, as well as, 29 U.S.C. § 185, which gives federal district courts jurisdiction over breach of contract claims between employers and labor organizations.

Second, with respect to compliance with procedural requirements, the Motion complies with E.D.N.Y. Local Rules 7.1(a)(1)–(3) and Local Rule 55.2(a)(2) because the Funds included a notice of the motion (ECF No. 12), a memorandum of law in support (ECF No. 16), as well as supporting evidence and affidavits (ECF Nos. 13, 14, 15). *See* E.D.N.Y. Local Rule 55.2(a)(2) (requiring compliance with Local Rule 7.1). Additionally, as noted in the R&R, the Motion meets the requirements of Local Rule 55.2(a)(1) because the Funds properly filed a declaration affirming that certificates of default were entered against all Defendants. (ECF No. 17.) Furthermore, by filing an affidavit demonstrating service of the required documents on Defendants via first class mail (ECF No. 19), the Funds also fulfilled the requirements of Local Rule 55.2(a)(3). Finally, the Funds' affidavit of damages (ECF Nos. 13, 14-6, 14-7) complies with the requirements of Local Rule 55.2(c) to provide the bases for all damages sought.

Finally, Local Rule 55.2(a)(1)(b) and (c) are not applicable "because Defendant is an entity and not an individual," so DME "is not a minor or an incompetent person under Local Civil Rule 55.2(a)(1)(C)" and "the Servicemembers Civil Relief Act requirement does not apply." *Great Bowery, Inc. v. Royal Beauty Studio Inc.*, No. 25-cv-3627, 2026 WL 1029641, at *9 (E.D.N.Y. Apr. 16, 2026). Thus, the Motion meets all procedural requirements.

Accordingly, I adopt the R&R's recommendation to grant the Motion for Default Judgment and award Plaintiffs the following relief:

(1) $85,691.46 in unpaid contributions from July 2025 through November 2025;

(2) $3,653.08 in interest through March 2, 2026, plus interest at the rate of $23.48 per day from March 2, 2026, through the date of judgment;

(2) $8,569.15 in liquidated damages;

(3) $3,231.77 in attorneys' fees and costs; and

(4) post-judgment interest calculated from the date the Clerk of Court enters judgment until date of payment, pursuant to 28 U.S.C. § 1961.

Accordingly, Plaintiff's Motion for Default Judgment (ECF No. 12) is GRANTED in its entirety.

Dated: Central Islip, New York
August 21, 2026

*/s/ Nusrat J. Choudhury*
NUSRAT J. CHOUDHURY
United States District Judge

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------X
Trustees of the UNITED UNION OF ROOFERS, WATERPROOFERS AND ALLIED WORKERS LOCAL 154 WELFARE, PENSION, ANNUITY, and APPRENTICESHIP AND TRAINING FUNDS,

Plaintiffs,

**REPORT AND**
**<u>RECOMMENDATION</u>**
CV 26–0135 (NJC)(AYS)

-against-

DME CONSTRUCTION ASSOCIATES INC. a/k/a DME CONTRACTING CO. INC.,

Defendant.
--------------------------------------------------X
**SHIELDS, Magistrate Judge,**

Plaintiffs Trustees of the United Union of Roofers, Waterproofers and Allied Workers Local 154 Welfare, Pension, Annuity and Apprenticeship and Training Funds (collectively, the "Funds" or "Plaintiffs"), brought this action against DME Construction Associates Inc. a/k/a DME Contracting Co. Inc. ("Defendant" or "DME"), pursuant to Section 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1145 and Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, seeking to recover certain unpaid contributions due and owing to employee benefit plans. (<u>See generally</u> Complaint ("Compl."), Docket Entry ("DE") [1].) In addition, Plaintiffs seek interest on the unpaid contributions, liquidated damages, and reasonable attorneys' fees and costs.

For the reasons below, this Court respectfully recommends that Plaintiffs' motion for default judgment be granted in its entirety.

BACKGROUND

I. Facts

A. The Complaint

The pertinent facts are drawn from the uncontested allegations in Plaintiffs' complaint, as well as documents incorporated by reference, and are taken as true for the purposes of deciding this motion. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 108 (2d Cir. 1997) (deeming all well-pleaded allegations in a complaint admitted on a motion for a default judgment); Gesualdi v. Interstate Masonry Corp., No. 12-CV-0383, 2014 WL 1311709, at *3 n.1 (E.D.N.Y. Mar. 28, 2014) (relevant collective bargaining agreements were deemed incorporated by reference into the complaint.)

ERISA is a comprehensive statutory regime that regulates employee retirement plans, Trs. of Local 138 Pension Tr. Fund v. F.W. Honerkamp Co. Inc., 692 F.3d 127, 128–29 (2d Cir. 2012) (citing ERISA § 2 et seq., 29 U.S.C. § 1001 et seq.). ERISA was designed to "ensure that employees and their beneficiaries would not be deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in the plans." Id. at 129. One type of plan governed by ERISA is relevant here: the multiemployer pension plan which allows multiple employers to "pool contributions into a single fund that pays benefits to covered retirees ... for one or more contributing employers." Id.

Plaintiffs are the trustees of the United Union of Roofers, Waterproofers and Allied Workers Local 154 Welfare, Pension, and Annuity and Apprenticeship and Training Funds (the "Funds") which are employee benefit plans and multi-employer plans within the meaning of ERISA. (Compl. at ¶ 4.) Defendant is a signatory a collective bargaining agreement ("CBA") with the United Union of Roofers, Waterproofers and Allied Workers, Local 154, AFL-CIO (the

"Union"). (Compl. ¶ 6.) The Union is a labor organization within the meaning of section 301 of the LMRA, 29 U.S.C. § 185. (Id. ¶ 7.) The Funds are third-party beneficiaries to the CBA. (Id. ¶ 8.) On or around September 21, 2020, DME entered into the CBA with the Union covering May 1, 2020 through April 30, 2023. (Declaration of Sal Giovanniello ("Giovanniello Decl."), DE [13], at ¶ 5.; Ex. A ("CBA", DE [13-1].) The CBA provides that

> [t]his Agreement shall be effective as of May 1, 2020, and shall continue in full force and effect until the 30th day of April, 2023, and unless sixty (60) days written notice is given prior to the expiration by the Union to the Employer or the Employer to the Union, is shall remain in full force and effect for a further period of (1) year, and from year to year thereafter, providing, however, that any Employer on not less than ninety (90) days written notice prior to the expiration of this Agreement or any of its extensions can notify the Union in writing of its desire to terminate this Agreement

(Giovanniello Decl., Ex. A, Art. § 1.) Neither the Union nor DE has provided any such written notice. Accordingly, at all relevant times to date, DME has been bound by the CBA. (Giovanniello Decl. at ¶ 7.)

The CBA requires DME to report and remit contributions to the Funds for every hour of work performed by its employees within the trade and geographical jurisdiction of the Union ("Covered Work"). (Giovanniello Decl. at ¶ 8; Ex. A. Art. IX.)

The CBA binds signatory employers to the documents and instruments governing the Funds incorporated thereto, including Funds' Policy for Collection of Delinquent Fringe Benefit Employer Contributions (the "Collection Policy"). (Giovanniello Decl. at ¶ 9; Compl. ¶¶ 10-11.) The CBA and Collection Policy require employers to submit reports detailing the number of hours of Covered Work performed by its employees and to remit corresponding contributions on or before the 15th day following the close of the month in which the hours were worked. (Giovanniello Decl. at ¶ 10; Compl. ¶ 12.) Under the CBA and Collection Policy, if an employer fails to remit reports and contributions to the Funds in a timely manner, then the employer is

liable to the Funds for interest on the amount of the unpaid contributions at an annual rate of ten percent (10%) and liquidated damages of ten percent (10%) of the amount of the unpaid contributions. (Giovanniello Decl. at ¶ 11; Ex. A, Art. XV § 6; Ex. C, Policy For Collection of Employer Contributions ("Contribution Policy"), DE [13-3], at Art. II § 6; Compl. ¶ 13.) If a delinquency matter is referred to counsel for legal action, the employer is also liable for all reasonable attorneys' fees and costs incurred in the action. (Id.)

DME Failed to remit contributions in the amount of $79,963.49 for July 2025 through October 2025 and failed to submit remittance reports detailing the number hours of Covered Work performed by its employees for the periods thereafter. (Compl. ¶¶ 20-21.) Since the commencement of this action, DME has continued to fail to timely submit reports and corresponding benefit contributions to the Funds for Covered Work performed by its employees. DME has failed to pay contributions for Covered Work performed by its employees during the period of July 2025 through November 2025 in the amount of $85,691.46. (Declaration of Patrick Moss ("Moss Decl."), DE [15], at ¶¶ 8-13; Declaration of Allison Herstic Esq. ("Herstic Decl."), DE [14], at ¶¶ 14-19.) Additionally, DME has failed to timely submit remittance reports detailing the number of hours of Covered Work performed by its employees for the period December 2025 and January 2026. (Moss Decl. at ¶¶ 14-15; Herstic Decl. at ¶¶ 20-21.)

B. Procedural History

Plaintiffs commenced this action on January 9, 2026. (Compl.) Plaintiffs properly served the summons and complaint on Defendant by personally serving Defendant at its last known address as well as personally serving its designated authorized agent in the Office of the Secretary of State of New York and filed proof of service. (DE [5] and [6].) When Defendant failed to respond to the complaint, Plaintiffs requested, and the Clerk of Court entered a

certificate of Defendant's default pursuant to Federal Rule of Civil Procedure 55(a) on February 10, 2026. (DE [9], Request for Certificate of Default on 02/10/2026; DE [10], Entry of Default.) On March 2, 2026, Plaintiffs moved for entry of a default judgment pursuant to Federal Rule of Civil Procedure 55(b). (DE [12], Motion for Default Judgment ("Mot").) Plaintiffs served Defendant as required by Local Civil Rule 55.2(c). (DE [17], Certificate of Service.) On March 3, 2026, the motion was referred to the undersigned for a report and recommendation. (See Order Referring Motion dated 03/03/2026.)

## DISCUSSION

### I. Entry of Default

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment. See Shariff v. Beach 90th St. Realty Corp., No. 11-CV2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after default has been entered, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant. Fed. R. Civ. P. 55(b)(2).
The Clerk entered a default against Defendant on February 10, 2026. (DE [11].) The Court first considers whether Plaintiffs have submitted sufficient facts for the Court to find that Defendant's conduct warrants entry of default judgment.

In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993); Pecarsky v. Galaxiworld.com, Ltd., 249 F.3d 167, 170-71 (2d Cir.

2001). These factors are "1) whether the defendant's default was willful; 2) whether the defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." Mason Tenders Dist. Council v. Duce Constr. Corp., No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003).

First, the failure by Defendant to respond to the Complaint demonstrates the default was willful. See, e.g., Indymac Bank v. Nat'l Settlement Agency, Inc., No. 07-CV-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding the defendants' non-appearance and failure to respond "indicate willful conduct" in the context of a default judgment). Defendant had sufficient notice of the present litigation because it was properly served with a summons and Complaint, which were left with an authorized agent with the Office of the Secretary of State on January 13, 2026. (DE [6].) The motion for default judgment and supporting papers were also served via mail. (DE [17].)

Notwithstanding this notice and service, Defendant did not respond to the Complaint, did not appear, and has not in any way attempted to defend itself before this Court, thus constituting willfulness in the context of default judgment. See, e.g., Sola Franchise Corp. v. Solo Salon Studios Inc., No. 14-CV-946, 2015 WL 1299259, at *6 (E.D.N.Y. Mar. 23, 2015) (adopting report and recommendation) ("Defendant has not responded to Plaintiffs' motion for default judgment, has not appeared in this action, and has not communicated with the Court in any way. Accordingly, Defendant's failure to answer the Complaint and to respond to the instant motion is sufficient to establish willfulness.").

Second, the Court cannot conclude there is any meritorious defense to the allegations because Defendant did not appear and did not assert or present evidence of any defense.

"[W]here a defendant fails to answer the complaint, a court is unable to make a determination whether the defendant has a meritorious defense to the plaintiff's claims, which circumstance weighs in favor of granting a default judgment. If a defendant presents no defense to the court, the allegations in the complaint are deemed admitted." Id. (quotations and citations omitted); see, e.g., Indymac Bank, 2007 WL 4468652, at *1 ("[T]he Court is unable to determine whether ... defendants have a meritorious defense to Plaintiff's allegations because they have presented no such defense to the Court.").

Third, the Funds would be prejudiced if the motion for default judgment were denied, "as there are no additional steps available to secure relief in this Court." Bridge Oil Ltd. v. Emerald Reefer Lines, LLC, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008), report and recommendation adopted, Dkt. No. 18 (Jan. 26, 2009); see also Sola Franchise Corp., 2015 WL 1299259, at *15 (finding the prejudice element was met because "[w]ithout the entry of a default judgment, Plaintiffs would be unable to recover for the claims").

As a result, all three factors establish grounds for entry of a default judgment. The Court now turns to the damages sought and other relief to be awarded in such a judgment.

II. Liability

In deciding a motion for default judgment, a court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009). A party's default is deemed an admission of all well-pleaded allegations of liability. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d. Cir. 1992); Morales v. B&M Gen. Renovation Inc., No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), report and recommendation adopted, 2016 WL 1258482 (Mar. 29, 2016). "Nevertheless, it remains for the court to consider whether the

unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." LaBarbera v. ASTC Labs. Inc., 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (citation and quotations omitted).

Plaintiffs' assert that DME failed to comply with the CBA by failing to submit reports to the Funds detailing the number of hours of Covered Work performed by its employees for the period of July 2025 through November 2025 and by failing to make the corresponding monetary contributions to the Funds. (Giovanniello Decl. at ¶ 10; Moss decl. at ¶¶ 8-13.) Section 515 of ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145; see also Flanagan v. Marco Martelli Assocs., Inc., No. 13-CV-6023 (ADS) (AKT), 2015 WL 1042279, at *8 (E.D.N.Y. Mar. 9, 2015) (noting that, under Section 515, "employers are required to pay fringe benefit contributions pursuant to an effective collective bargaining agreement").

To establish a violation of Section 515, Plaintiffs must show that DME "(1) is an employer; (2) is bound by a CBA that required payment of contributions; and (3) failed to make those contributions." Trustees of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Rici Corp., No. 23-CV-5856 (DLI) (SJB), 2024 WL 4314958, at *4 (E.D.N.Y. Aug. 19, 2024); see also Health & Welfare Fund of the United Food & Com. Workers Loc. 2013, AFL-CIO By Carotenuto v. Precision Abstract, LLC, No. 16-CV-4690 (AMD) (SMG), 2017 WL 4325713, at *3 (E.D.N.Y. May 19, 2017) (analyzing liability under Section 515), report and recommendation adopted, 2017 WL 4296740 (E.D.N.Y. Sept. 26, 2017).

First, Plaintiffs have established that DME is an employer under the meaning of ERISA. "An 'employer' is 'any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan ... and includes a group or association of employers acting for an employer in such capacity.'" Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers Loc. 15, 15A, 15C & 15D, AFL-CIO by Callahan v. Baymen Indus. Ltd., No. 22-CV-703 (VMS), 2024 WL 4274949, at *7 (E.D.N.Y. Sept. 24, 2024) (quoting 29 U.S.C. § 1002(5)). Plaintiffs sufficiently allege that DME is acting as an employer because it is a construction company that bound itself to the CBA and the benefit plan. (See Compl. ¶¶ 5-10, 23-28; see The Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds of the International Union of Operating Engineers Loc. 15, 15A, 15C & 15D, AFL-CIO v. Rizzo Env't Servs. Corp., No. 22-CV-00556 (NGG) (LB), 2022 WL 1460585, at *3 (E.D.N.Y. May 9, 2022) ("The term 'employer' refers to 'any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan.")).

Second, Plaintiffs sufficiently allege that the CBA obligated DME to make benefit contributions. (Compl. ¶¶ 9-10, 25.) ERISA requires that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. "ERISA's reference to a "'plan" means an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan.'" Rizzo Env't Servs. Corp., 2022 WL 1460585, at *3 (quoting 29 U.S.C. § 1002(3)).

Third, Plaintiffs sufficiently allege that DME failed to make those benefit contributions. According to the Complaint, DME at relevant points "failed to submit reports detailing the number of hours of Covered Work performed by its employees" in violation of the CBA and Collection Policy. (Compl. ¶¶ 15-21.) This is sufficient to state a claim under Section 515. See, e.g., The Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds of the International Union of Operating Engineers Loc. 15, 15A, 15C & 15D, AFL-CIO v. Trac Constr. Grp., Inc., No. 22-CV-1935 (ENV) (RER), 2022 WL 7810540, at *3, (E.D.N.Y. Oct. 4, 2022) ("At the pleading stage, allegations in a complaint that an employer failed to remit contributions to an ERISA plan are sufficient to establish the employer's liability under ERISA") (quotation omitted); Rizzo Env't Servs. Corp., 2022 WL 1460585, at *3 (finding "allegations in a complaint that an employer failed to remit contributions to an ERISA plan are sufficient to establish the employer's liability under ERISA"); Trustees of the Loc. 813 Ins. Tr. Fund v. A.A. Danzo Sanitation, Inc., No. 16-CV-318 (SJ) (SJB), 2018 WL 4268907, at *3 (E.D.N.Y. Aug. 8, 2018) (recommending that the employer's failure to make contributions pursuant to a collective bargaining agreement constitutes a violation of ERISA), report and recommendation adopted, 2018 WL 4266038 (E.D.N.Y. Sept. 5, 2018); Finkel v. Omega Commc'n Servs., Inc., 543 F. Supp. 2d 156, 160 (E.D.N.Y. 2008) ("The allegations in plaintiff's complaint establish the elements of liability required to state a claim under section 515 of ERISA ... Plaintiff alleges that defendant entered into an agreement with the Union under which defendant was obligated to make contributions to the ERISA Plans and that defendant failed to make such contributions.");

Based on the undisputed allegations in the Complaint, and construing them as true, the Court finds that Plaintiff has asserted valid claims under ERISA. Here, Plaintiffs have asserted that Defendant entered into CBAs with the Funds and failed to remit benefit contributions owed

under the CBAs. Thus, Plaintiffs have sufficiently alleged facts supporting the elements of a claim for unpaid contributions and accompanying liability under ERISA against the Defendant.

Accordingly, this Court respectfully recommends that the Plaintiffs' motion for judgment as to liability under ERISA be granted.

III. Damages Under ERISA

A. Standard

To establish damages upon a default, the movant needs to prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." Id. at 159. An evidentiary hearing is not required so long as there is a basis for the damages awarded. Transatl. Marine Claims Agency v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (citations omitted). It is proper for the Court to "rely on detailed affidavits or documentary evidence ... to evaluate the proposed sum." Fustok v. Conticommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989).

Section 502(g)(2) of ERISA provides that a fiduciary seeking to enforce provisions of an employee benefit plan is entitles to recover:

> (A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of – (i)interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent ... of the [unpaid contributions], (D) reasonable attorney's fees and costs of the action ...

29 U.S.C. § 1132(g)(2).

B. Damages Sought

Plaintiffs seek from DME a total of $101,145.46 – compromising $85,691.46 in unpaid contributions from July 2025 through November 2025, interest on the unpaid contributions through March 2, 2026 of $3,653.08, liquidated damages of $8,569.15, plus interest on the

unpaid contributions from March 2, 2026 through the date of judgment at the aggregate rate of $23.48 per diem, and attorneys' fees and costs in the amount of $3,231.77, as well as post-judgment interest at the statutory rate and DME's unreported and unpaid contributions through January 2026.

In deciding whether plaintiff may be awarded such damages, the Court must determine whether plaintiff has provided sufficient notice to defendant. See Cement & Concrete Workers Dist. Council Welfare Fund v. Baroco Contracting Corp., No. 08 CV 1671, 2009 WL 928331, at *3 (E.D.N.Y. Apr. 2, 2009) (discussing the importance of providing sufficient notice to defendants in allowing recovery in an ERISA default judgment action) (citing cases). However, when plaintiff clearly seeks such damages in its complaint, sufficient notice has been provided. See, e.g., id.; Finkel v. Triple A Grp., Inc., 708 F. Supp. 2d 277, 282–83 (E.D.N.Y. 2010).

In this case, while the Complaint seeks damages for the period of July 2025 through October 2025, the Complaint also expressly requests "any additional delinquent not timely reported and/or paid during the course of this litigation, with the corresponding interest, liquidated damages, and attorneys' fees according to the CBA and Collection Policy." (Compl. ¶¶ 22, 28.) Similar relief is also sought in Plaintiff's "Wherefore" clause of the Complaint.

Under these circumstances, the Court finds that the Complaint provided Defendant with sufficient notice that Plaintiffs would seek unpaid contributions accruing after the action was filed, interest that accrued both before and subsequent to the filing of the Complaint for the various amounts due to Plaintiffs, and liquidated damages. See Finkel v. Triple A Grp., Inc., 708 F. Supp. 2d at 282–83 (holding defendants liable for damages in an ERISA action that accrued after the filing of the complaint, where the complaint sought amounts due for unpaid contributions "as of the date judgment is entered," but not holding defendants liable for damages

due for interest and liquidated damages on late-paid contributions because such damages were not mentioned in the complaint) (internal quotations omitted).

Thus, the Court respectfully recommends that the Funds are entitled to a judgment which includes DME's unreported and unpaid contributions through January 2026.

1. Unpaid Contributions

"A plaintiff who has established liability under Section 515 is entitled to an award of: (1) the amount of unpaid contributions, (2) interest on the unpaid contributions, (3) liquidated damages, (4) reasonable attorney's fees and costs, and (5) such other legal and equitable relief as the court deems appropriate." Annuity, Pension, Welfare, Training & Lab. Mgmt. Cooperation Tr. Funds of Int'l Union of Operating Engineers Loc. 14-14B, AFL-CIO v. C.M. Ashland Constr., 714 F. Supp. 3d 167, 180 (E.D.N.Y. 2024)(citing Lanzafame v. Toquir Contracting, Inc., 545 F. Supp. 2d 255, 259 (E.D.N.Y. 2007)) (quotations omitted).

"In ERISA cases seeking an award of damages after a finding of liability, Courts frequently rely on the affidavits, reports, and other documentary evidence filed by plaintiffs." Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers Loc. 15, 15A, 15C & 15D, AFL-CIO by Callahan v. PETK, Inc., No. 22-CV-3559 (LDH) (LB), 2022 WL 19520880, at *4 (E.D.N.Y. Oct. 13, 2022); Akro Gen. Contracting, Inc., 2016 WL 6775467, at *7 ("A court may evaluate the fairness of a proposed damages award by relying on affidavits and documentary evidence"); Bricklayers Ins. & Welfare Fund v. McGovern & Co., LLC, No. 17-CV-6067 (SJ) (ST), 2019 WL 2271942, at *3 (E.D.N.Y. Mar. 6, 2019), report and recommendation adopted, 2019 WL 1772399 (E.D.N.Y. Apr. 23, 2019) (listing the copious documentary evidence supporting plaintiffs' damages request).

Here, Plaintiffs seek $$85,691.46 in unpaid contributions owed to the Funds for the period of July 2025 through November 2025. (Moss Decl. ¶¶ 8-13; Herstic Decl., Ex. I, DE [14-6].) Plaintiffs have provided detailed supporting documents, including supporting declarations from a Union officer (Giovanniello Decl.) and an administrator of the Funds (Moss Decl.), and a delinquency calculation. (DE [14-6].)

Reviewed together, Plaintiffs' submissions are sufficient for the Court to calculate damages regarding the amount DME owes to Plaintiffs in unpaid contributions. See Trustees of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Regimental Contracting, LLC, No. 22-CV-3757 (ENV) (RML), 2023 WL 2969471, at *4 (E.D.N.Y. Feb. 27, 2023) (finding damages the plaintiffs sought proper based on the supporting documentation in their motion for default judgment); Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers Loc. 15, 15A, 15C & 15D, AFL-CIO by Callahan v. Triton Builders, Inc., No. 22-CV-4809 (DLI) (LB), 2022 WL 18859028, at *6-*7 (E.D.N.Y. Nov. 16, 2022) (recommending damages for unpaid contributions in ERISA suit based on affidavits and reports submitted in support of the motion for default judgment).

Thus, the Court respectfully recommends that Plaintiffs be awarded $85,691.46 in unpaid contributions for the period of July 2025 through November 2025.

2. Liquidated Damages

Under Section 502, Plaintiffs are entitled to liquidated damages on the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C). "ERISA permits the Court to award liquidated damages equal to the greater of either: (1) the interest on the unpaid contributions; or (2) the amount designated by the CBA (up to 20% of the delinquent contributions)." PETK, Inc., 2022 WL 19520880, at *7 (quoting 29 U.S.C. § 1132(g)(2)(C)(i)-(ii)); see Coastal Env't Grp. Inc.,

2019 WL 4603805, at *11 (citing 29 U.S.C. § 1132(g)(2)(C)) (iterating same standard); Triton Builders, Inc., 2022 WL 18859028, at *7; Finkel v. Colony Elec. Co., No. 10-CV-2240 (FB) (LB), 2010 WL 5665042, at *10 (E.D.N.Y. Nov. 8, 2010) (same), report and recommendation adopted, 2011 WL 346738 (E.D.N.Y. Feb. 1, 2011); Annuity, Pension, Welfare, Training & Lab. Mgmt. Cooperation Tr. Funds of Int'l Union of Operating Engineers Loc. 14-14B, AFL-CIO by Christian v. BKS-NY, LLC, No. 18-CIV-0256 (LDH) (VMS), 2018 WL 4522103, at *6 (E.D.N.Y. Aug. 6, 2018) (same).

The liquidated damages for the delinquent contributions that Plaintiffs seek are proper. Pursuant to the CBA and Collection Policy, if an employer fails to pay contributions when due, the employer is liable to the Funds for interest on the amount of the unpaid contributions at the rate of ten percent (10%) per annum, as well as liquidated damages in the amount of ten percent (10%) of the contributions determined to be due and owing. (Compl. ¶ 28; see Giovanniello Decl., Ex. A, Art. XV § 6; Ex. C, Art. II § 6.) Plaintiffs seek $8,569.15 in liquidated damages for unpaid contributions for Covered Work performed between July 2025 and November 2025.

Having reviewed the applicable provisions of the CBA and the Collection Policy and confirming Plaintiffs' calculations (see DE [14-6]) the Court respectfully recommends that Plaintiffs be awarded liquidated damages in the amount of $8,569.15. See PETK, Inc., 2022 WL 19520880, at *4 (recommending liquidated damages at the rate of 10% of the delinquent contributions owed).

3. Interest

Plaintiffs are also entitled to prejudgment interest on the unpaid contributions. See 29 U.S.C. § 1132(g)(2)(B) ("In any action under this subchapter by a fiduciary for or on behalf of a

plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—(B) interest on the unpaid contribution”).

“ERISA provides that ‘interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of the Internal Revenue Code of 1986.’” Loc. 363, United Elec. Workers of Am., IUJAT v. J. United Elec. Contracting Corp., No. 22-CV-6864 (CBA) (MMH), 2024 WL 1251601, at *4 (E.D.N.Y. Mar. 15, 2024), report and recommendation adopted, 2024 WL 1345801 (E.D.N.Y. Mar. 29, 2024); see Coastal Env't Grp. Inc., 2019 WL 4603805, at *11 (citing 29 U.S.C. § 1132(g)(2)) (same); BKS-NY, LLC, 2018 WL 4522103, at *9 (“Under Section 502(g)(2) of ERISA, if an employer fails to remit required contributions to a plan, the plan is entitled to interest on the unpaid contributions, calculated at the rate “provided under the plan,” or, if unstated, the rate prescribed in 26 U.S.C. § 6621.”).

Plaintiffs seek interest calculated at 10 percent from the day following the Due Date through the date of payment totaling $3,653.08 in interest on unpaid contributions for Covered Work performed between July 2025 through November 2025 as of March 2, 2026. (Herstic Decl. ¶¶ 24, 27; Ex. I.) Plaintiffs further seek from March 2, 2026, through the date of judgment for unpaid contributions for Covered Work performed between July 2025 and November 2025 at the rate of $23.48 per day. (DE [14-6].)

Having reviewed Plaintiffs’ calculations and supporting documents, the Court respectfully recommends that Plaintiffs be awarded $3,653.08 in interest on unpaid contributions for Covered Work performed between July 2025 through November 2025 as of March 2, 2026, and interest at the rate of $23.48 per day from March 2, 2026, through the date of judgment.

4. Attorney’s Fees and Costs

Plaintiffs also request an award of reasonable attorney's fees and costs in the amount of $2,470.00 pursuant to Section 502(g)(2)(D) of ERISA, 29 U.S.C. § 1132(g)(2)(D), and the Trust Agreement. (See Adler Decl. ¶¶ 34, 38, 41, 42; Bhatti Decl., Ex. A (Trust Agreement), at 27.) "ERISA 'mandates the granting of reasonable attorneys' fees and costs in ERISA matters brought by fiduciaries to enforce the terms of the collective bargaining agreement.'" Gesualdi v. Reid, No. 19-cv-4132, 2021 WL 8316386, at *13 (E.D.N.Y. Aug. 12, 2021) (quoting Sheet Metal Workers' Nat'l Pension Fund v. RHB Installations Inc., No. 12-cv-2981, 2015 WL 1509498, at *5 (E.D.N.Y. Mar. 31, 2015)).

The starting point of the attorney's fee calculation is the lodestar method, under which fees are determined by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." Wright v. Miah, No. 22-CV-4132, 2023 WL 6219435, at *14 (E.D.N.Y. Sept. 7, 2023), report and recommendation adopted, 2023 WL 6216541 (E.D.N.Y. Sept. 25, 2023) (citation omitted); see also Millea v. Metro-N. R. Co., 658 F.3d 154, 166 (2d Cir. 2011). The lodestar "'is essentially what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively.'" Wright, 2023 WL 6219435, at *14 (quoting Streamlight, Inc. v. Gindi, No. 18-CV-987, 2019 WL 6733022, at *18 (E.D.N.Y. Oct. 1, 2019)).

To calculate attorney's fees, courts in the Second Circuit determine the reasonable hourly rate, defined as "the rate a paying client would be willing to pay[,]" and multiply that rate by the number of hours reasonably expended in prosecuting an action. Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 493 F.3d 110, 117–18 (2d Cir. 2007). To determine what a reasonable client would pay, courts consider the community in which the district court sits and look to the prevailing rates for attorneys in that field with comparable experience. See

Gesualdi v. Bestech Transp., LLC, No. 14-cv-1110, 2022 WL 866853, at *2 (E.D.N.Y. Mar. 23, 2022) ("The reasonableness of hourly rates is guided by the market rate '[p]revailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation, and the relevant community is generally the district in which the court sits.") (cleaned up); Rudler v. Houslanger & Assocs., PLLC, No. 18-cv-7068, 2020 WL 473619, at *2 (E.D.N.Y. Jan. 29, 2020) ("This Court follows the Second Circuit's 'forum rule,' which 'generally requires use of the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable rate.'"). Presumptively reasonable hourly rates in this District are currently "$450-$650 for partners, $300-$450 for senior associates, $150-$300 for junior associates, and $100-$150 for paralegals." Rubin v. HSBC Bank USA, NA, 763 F. Supp. 3d 233, 244 (E.D.N.Y. 2025).

The fee applicant has the burden to establish the reasonableness of the requested hourly rates. Trs. of Metal Polishers Loc. 8A-28A Funds v. Legacy Restoration Metal Stone Wood, LLC, No. 24-CV-5192, 2025 WL 3461171, at *10 (E.D.N.Y. Aug. 29, 2025). Based on the billing records of Plaintiffs' counsel, Plaintiffs were charged for the work of two attorneys and three legal assistants at the following hourly rates and levels of seniority:

| **Individual** | **Seniority** | **Hourly Rate** |
|---|---|---|
| Maura Moosnick | Partner | $300.00 |
| Allison Herstic | Associate | $200.00 |
| Eva Keating | Legal Assistant | $100.00 |
| Alice Gaalswyk | Legal Assistant | $100.00 |
| Jenya Polavarapu | Legal Assistant | $100.00 |

First, the $123.50 hourly rate for the legal assistants associated with this matter, are within the $100 to $150 range for paralegals and legal assistants in this District. In addition, the $300 hourly rate for Michael S. Adler, a partner, with a practice that focuses on multiemployer employee benefit plans in ERISA litigation, is reasonable as compared to the $450 to $650 range for partners in this District. (Herstic Decl. ¶ 33.) Similarly, the $200 hourly rate for Allison Herstic, a junior associate with a primary practice area of labor and ERISA litigation, is reasonable as compared to the $150 - $300 range for junior associates in this District. (Id. ¶ 32.)

Plaintiffs' counsel billed for 15 hours of legal services, all of which were related to this case, securing an entry of default, drafting Plaintiffs' pleadings and the instant Motion, and preparing correspondence to Plaintiffs and Defendant. (Herstic Decl. ¶ 36; Ex. J, DE [14-7].) Reviewing these billing records, the Court finds that this billing was "reasonable and not excessive, redundant, or unnecessary." Trs. of Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Toros Bros. Constr. Corp., No. 24-CV-6634, 2025 WL 3265230, at *10 (E.D.N.Y. Nov. 24, 2025). Compared to other ERISA cases involving default judgment motions, the Court also finds that Plaintiffs' counsel dedicated a reasonable number of hours to this case. See Argila v. Mach Grp., Inc., 740 F. Supp. 3d 128, 135 (E.D.N.Y. 2024) ("[C]ourts in this district typically award attorney fees for roughly twenty to thirty hours of work in ERISA default judgment cases."); Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers Loc. 15, 15A, 15C & 15D, AFL-CIO by Callahan v. PETK, Inc., No. 22-CV-3559, 2022 WL 19520880, at *7 (E.D.N.Y. Oct. 13, 2022) (collecting cases).

Thus, the Court respectfully recommends awarding Plaintiffs $2,740.00 in attorneys' fees.

Additionally, Plaintiff requests $491.77 in costs. "Courts typically allow counsel to recover their reasonable out-of-pocket expenses." Viafara v. MCIZ Corp., No. 12-cv-7452, 2014 WL 1777438, at *15 (S.D.N.Y. May 1, 2014). Having reviewed the itemized list of costs, the Court finds Plaintiffs' request to be reasonable. (Herstic Decl. ¶ 37; Ex. J.) The Court therefore respectfully recommends awarding Plaintiffs $491.77 in costs.

5. Post-Judgment Interest

Under 28 U.S.C. § 1961, "the award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." H.C. v. New York City Dep't of Educ., 71 F.4th 120, 129 (2d Cir. 2023) (internal quotation marks and citations omitted); see also 28 U.S.C. § 1961(a). Accordingly, the undersigned recommends that Plaintiffs be granted post-judgment interest calculated from the date the Clerk of Court enters judgment until the date of payment at the statutory rate. See 28 U.S.C. § 1961.

CONCLUSION

For the foregoing reasons, this Court respectfully recommends that Plaintiffs' motion for default judgment, found at docket entry No. 12 herein, be granted in its entirety and damages awarded in the following amounts:

(1) **$85,691.46** in unpaid contributions;

**(2) $3,653.08** in interest, **plus interest at the rate of $23.48 per day from March 2, 2026, through the date of judgment.**

(3) **$8,569.15** in liquidated damages;

(4) **$3,231.77** in attorneys' fees and costs; and

(5) Post-judgment interest calculated from the date the Clerk of Court enters judgment until date of payment, pursuant to 28 U.S.C. § 1961.

OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF. Further, Plaintiffs' counsel is directed to serve a copy of this Report and Recommendation by overnight mail and first-class mail to Defendant at their last known addresses and to file proof of service on ECF by July 8, 2026. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days may preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

Dated: Central Islip, New York
July 3, 2026

/s/ Anne Y. Shields
Anne Y. Shields
United States Magistrate Judge